## HAWKINS & CO. v. LEARNED.

When a person against whom a suit is pending is decreed to be a spendthrift by the probate court, and his estate is decreed to be administered as an insolvent estate, such suit will, on motion of the guardian of such spendthrift, be dismissed.

The facts upon which this motion is founded need not be pleaded; it is enough that they be suggested in any way that satisfies the court of their existence.

The question of the defendant's being a spendthrift cannot be tried in this court in such a case, except upon an appeal taken from the decision of the judge of probate upon that question.

Though the general bankrupt law of the United States may suspend all state insolvent laws, yet it does not affect the general law for the settlement of insolvent estates of persons deceased.

ASSUMPSIT, by L. B. Hawkins & Co. against Lewis M. Learned, to recover the amount of a promissory note, and for goods sold and delivered. Writ dated October 24, 1873. December 23, 1873, the defendant was duly decreed to be an insane person by the probate court for Merrimack county, and John C. Smith was appointed his guardian.   March 24, 1874, upon the representation of said guardian, said probate court decreed said estate insolvent, and appointed John M. Shirley commissioner of insolvency.

At the April term, 1874, said guardian appeared specially by his

attorney, E. B. S. Sanborn, Esq., and moved that this action be dismissed by reason of said proceedings in the probate court; and the questions arising on said motion were reserved for the consideration of the whole court.

*Barnard*, for the plaintiffs.

The suit was properly brought. Some proceedings, without notice, in the probate court were had, and the counsel for the guardian, by reason of such proceedings, which he brings to the attention of the court by copies thereof, moves to dismiss.

I. If by reason of such proceeding the suit should not be further prosecuted, a plea in bar is the only proper way for the guardian to avail himself thereof. The plaintiffs should have the right to be heard upon any fact so material, vital, even, to their interest as a suspension of the proceedings instituted by them for the collection of their debt, and a dissolution of the attachment by which it is secured. The proceedings in the probate court may be collusive. The question whether a man is insane, and, much more, a spendthrift, is many times so evenly balanced upon the evidence that it is difficult of determination. Upon these questions, any party whose rights are to be affected has a right to be heard; and upon no sound principle of law, it seems to me, can insanity or improvidence be assumed against the interests of an attaching creditor. It is only when the facts are admitted, which if pleaded are a bar to the further prosecution of the suit, that it can be dismissed; and *Jones* v. *Jones*, cited by the guardian in his brief, can mean no more than this. See *Amidown* v. *Peck*, 11 Met. 467 and 468, and authorities there cited; *Haverhill Ins. Co.* v. *Prescott*, 38 N. H. 398, and authorities on page 400.

II. There is, however, another objection which goes to the substance of what is claimed by the motion to dismiss. That motion is based upon the fact that the estate of the defendant is administered upon under the insolvent laws of this state. My answer to this position is, that all state insolvent laws having for their object the equal distribution of a debtor's assets among all his creditors were suspended when the bankrupt law of the United States went into operation. *Chamberlain* v. *Perkins*, 51 N. H. 339, 340, and authorities cited; *Commonwealth* v. *Michael O'Hara*, Dist. Court of Alleghany Co., Penn., 6 Int. Rev. Record 125; BRADLEY, J., *in re Reynolds*, Nat. Bankrupt Reg., vol. ix, p. 50.

The fact that the defendant was insane on the day he was so decreed by the probate court, does not place him in a different position in regard to the bankrupt law from what he would have occupied had he been sane; for, though a person cannot commit an act of bankruptcy while a lunatic, yet if while sane he has committed such an act, he may be made bankrupt after he has become a lunatic. LOWELL, J., *in re D. Pratt*, 6 Bankrupt Register 276.

*E. B. S. Sanborn*, for Smith, the guardian.

I. If I comprehend the first position taken in the plaintiffs' brief, it is that the proceedings in the probate court should, in some manner, be made an issue in this suit. This cannot be done. The jurisdiction of the probate court is fixed by statute, and within its limits is supreme. It is enough for this court to know, when collateral inquiry is made, that the jurisdiction assumed by the probate court in a given case is conferred by law, and that a decree has been made. Such decree is as binding upon this court as upon any person affected directly by it. It cannot be reversed or annulled, except upon appeal according to the mode prescribed, nor questioned collaterally in any other court, unless for fraud. *Tebbets* v. *Tilton*, 24 N. H. 120 ; *Hurlburt* v. *Wheeler*, 40 N. H. 73.

The case finds that the defendant was decreed an insane person, and his estate decreed insolvent, and a commissioner duly appointed by the probate court for Merrimack county. These facts appearing, the statute directs this court to dismiss this suit.

It does not occur to me that the facts or their effect can be different, whether brought to the notice of the court by plea or suggestion. The opinion in *Jones* v. *Jones*, 45 N. H. 123, expressly recognizes " suggestion " as a proper mode of informing the court of the facts, and I am not aware that this practice has ever been questioned. What would make a sufficient plea in this case ? A proper allegation of the decrees of the probate court, I suppose. What proof would sustain it ? The proper copies of the record of the probate court of such decrees.

I do not apprehend that the " interests of an attaching creditor," or the question of " evenly balanced evidence," or " difficulty of determination of the question of insanity," would find much room in court upon such an issue. There is a proper manner in which to raise those questions by appeal from the decrees of the probate court ; but it would probably require great ingenuity in the pleader to seduce this court into a trial of them in this suit. There are some curious objections which might be imagined against bringing these facts to the acquaintance of this court by plea. For instance, who shall plead ? Not the lunatic, of course ; yet he is the only defendant in court at the outset : the guardian is not in court, according to my brother's theory, until he pleads himself in with becoming dignity. How will the guardian get his first foothold from which to plead, unless, upon suggestion, he is admitted ? Whatever the reason, the practice is to give notice to the court by suggestion. In the present case, no claim is made that the facts are not correctly stated, however they may have been ascertained. It might not be a harsh supposition that the decrees of a tribunal relating to the estates of deceased or insane persons should stand upon a different footing from those concerning the estates of living and sane persons, whose voluntary acts are required to give the decrees validity and force.

II. The further objection to dismissing this suit is, that the statute

upon which this motion is based is suspended by the United States bankrupt law, and the case of *Chamberlain* v. *Perkins*, 51 N. H. 339, is relied upon as authority in support of the position. *Chamberlain* v. *Perkins* does not adjudicate this point, yet I freely admit that the opinion in that case fully indorses the doctrine that there is no state insolvent or bankrupt law under which the estate of a living and sane person can be distributed while the United States law is in force.

The questions raised in that case had reference to the acts of a person attempting to distribute his estate among his creditors, and the language used by the court is confined entirely to that class of cases. When the court say that when the United States bankrupt law went into operation " all state insolvent laws," etc., were suspended, are we to understand that the estates of deceased persons cannot be distributed under our laws for that purpose? Such a rendering would be too absurd for serious attention. We discover at once that *Chamberlain* v. *Perkins* refers neither to dead nor insane persons; not to our laws, which provide for the care of lunatics and widows; not to the provisions absolutely necessary, and incident to the legislation for the comfort of the lunatic and his family.

Most of the cases cited in *Chamberlain* v. *Perkins* carefully guard and limit the application of the doctrine that the United States bankrupt law suspends state laws, by saying that it does so only when it affects the same person, the same property, and aims at the same result. In some of those cases, state insolvent laws are designated as " insolvent or bankrupt laws," and there seems to be an attempt made to negative any idea of suspending or superseding any state law, save only those designed to attain the same result of the United States bankrupt law.

Now, then, to find that our statutes relating to " guardian and ward," and " estates of deceased persons," because they provide a speedy manner of settlement of estates, contain a bankrupt law, would be a remarkable discovery, even for the most erratic United States district judge that ever succeeded in bewildering the public with an opinion as unlike those of his brother judges as possible; and when found, I imagine it would tax even the adroit management of my brother to pilot a dead man's estate through bankruptcy.

No such doctrine can be deduced from *Chamberlain* v. *Perkins*, nor from any case cited in that opinion; yet the broad statements in the plaintiff's brief cover the estates of dead men as well as lunatics. To extend the United States bankrupt act over cases like this is a practical nullification of our statutes concerning the insane. It will interrupt and render impossible duties which our law commands the guardian to perform, and for the neglect of which it imposes penalties, and makes his bondsmen liable. It will create a conflict of jurisdictions. Suppose the bankrupt court attempts to escort a lunatic through its processes, where would it leave him? He cannot take the oath for his discharge, and certainly no guardian or friend can act as his substitute in this duty, because it is a personal matter purely; yet a discharge

is the right of a person who complies with the requirements of the bankrupt law, and without it he is liable to suits for any balances due creditors, and thus he becomes the victim of law, which cannot shield him, though innocent, and which, by its own existence, abolishes' our statutes enacted to protect him, if this insane theory is as the plaintiff puts it. Take, for instance, the case at bar. If there was any act of bankruptcy committed by the defendant, it must have been prior to October 24, 1873, the date of the writ. Six months having passed, this lunatic cannot be made a bankrupt from neglect to pay that claim. Indeed, as against all claims, having been a lunatic by decree of the court for more than six months, he cannot be declared a bankrupt upon the plaintiff's theory. So, then, the bankrupt act cannot trouble this defendant, nor interfere with our home jurisdiction, and we have no practical difficulty in our way from that source. What, then, is desired by this invocation of the bankrupt law? Why, although the bankrupt law cannot be stretched around this lunatic, its shadow is conjured forth to suspend our local law long enough for the plaintiff to get his execution and levy it; and the shrewd result of playing off the bankrupt law against our statute is, not bankrupt proceedings, but further prosecution of this suit in defiance of our state laws, and the decrees of the probate court.

So far as this proceeding is concerned, there is no bankrupt law in force. Had the plaintiff in good faith attempted proceedings under it, and succeeded, he might be heard with consistency upon this question; but never having attempted or desired them, his position should have no equitable consideration. I deem this fact of importance, because, when this court is called upon to directly adjudicate just precisely what state laws the United States bankrupt act suspends, I have faith that its decision will be a careful refinement of the decisions of other states, and that some due regard to facts and their adjustment will be observed, and that it will be found that the United States bankrupt law suspends a state law only when it can be and actually is put in operation. I think this is all that should be claimed or allowed, and that the puzzling paradox of a law which cannot apply in a given case, actually applying far enough to suspend all laws which do apply, ought to be got rid of.

Recur again to the case at bar. The United States bankrupt law never has attempted to take charge of the defendant's estate. Why? Because it never came within its jurisdiction. Why, then, should it interrupt our local proceedings?

It seems to me that, aside from the fact of the defendant's insanity, there is reason enough for not allowing the doctrine claimed here; yet, whatever may be found to be law upon this particular point, I am confident that the administration of our laws concerning the estates of insane persons cannot be interfered with by the United States bankrupt act.

SARGENT, C. J. The motion to dismiss in this case is founded upon

Gen. Stats., ch. 167, sec. 10, as follows : " When, upon representation of the guardian of any insane person or spendthrift, the judge is satisfied that estate of the ward is not sufficient to discharge the just debts due therefrom, he may decree that said estate be settled as insolvent, and thereupon such proceedings shall be had, decrees made, appeals allowed, suits disposed of, and the accounts of the guardian adjusted, as in the case of insolvent estates of deceased persons."

In this case, it is agreed that the defendant was duly decreed to be an insane person by the probate court, and a guardian was appointed. The guardian made the proper representation to the probate court, and the defendant's estate was thereupon decreed to be administered as insolvent ; and after this, at this term, the guardian appears and moves that this action, which was commenced October 24, 1873, be dismissed in consequence of such proceedings in the probate court.

This is the same way a suit would be disposed of in case of a deceased person whose estate was decreed to be administered as insolvent. No action shall be commenced or prosecuted against an administrator after the estate is decreed to be administered as insolvent, but the cause of action may be presented to the commissioner and allowed, with the costs of any action pending at the time of such decree—Gen. Stats., ch. 179, sec. 8 ; and in such cases no plea is necessary setting forth the decease or the insolvency. When the facts are suggested, and the court is satisfied that such decrees have been made in the court of probate, the actions are discontinued in this court at once.

It is urged in argument that the plaintiffs should be heard upon the question whether the party is insane, etc. ; but that could not be in this court. The probate court is the tribunal selected by law to settle that question ; and, when once settled there, it is settled for all other places and all other courts. This must be so from the nature of the case. If it were not so, the same man might be held both sane and insane at the same time. The case of *Jones* v. *Jones*, 45 N. H. 123, is directly in point, under provisions of the statute precisely like the present, and must control this case.

The authorities cited, that the general bankrupt law of the United States supersedes all state insolvent laws, do not apply. The laws for the settlement of the estates of deceased persons though they may provide for settling estates in the insolvent course, yet are not regarded as general insolvent laws. It would not be claimed, probably, that the statute for the settlement of the estates of deceased persons in the insolvent course was superseded by the general bankrupt law ; and if not, then this would not be, because this statute provides for settling the estates of insane persons in all respects like the settling of the estates of persons deceased.

The motion to dismiss

*Must be granted.*